UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ONSITE TRUCK AND TRAILER SERVICE,
INC.,                                                          Plaintiff,

v.                                                    Civil Action No. 3:17-cv-320-DJH

PRECISION DIESEL REPAIR LIMITED
LIABILITY COMPANY, et al.,                                    Defendants.

* * * * *

**MEMORANDUM OPINION AND ORDER**

Plaintiff Onsite Truck and Trailer Service accuses its former employees, Defendants

Tyler Bratcher and Ryan Farris, of unfair competition and trademark infringement arising out of

their use of the term "on-site" in advertising for their new company, Defendant Precision Diesel

Repair.  (Docket No. 1)  Defendants have moved to dismiss, or in the alternative for summary

judgment, arguing that they make fair use of the term and thus cannot be held liable.  (D.N. 11;

*see* D.N. 11-1)  For the reasons explained below, the Court finds that Onsite's complaint states a

plausible claim for relief and that consideration of the fair-use defense at this stage would be

premature.  Defendants' motion to dismiss will therefore be denied.

I.      **BACKGROUND**

The following facts are set forth in the complaint and accepted as true for purposes of the

present motion.  *See Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  Onsite provides

roadside assistance and repair services for trucks and other vehicles in Kentucky and surrounding

states.  (D.N. 1, PageID # 3)  From at least February 1, 2006, to the present, it has used the

service mark ONSITE® "to identify and distinguish its services from those provided by others

and to indicate the source of those services"; the mark is recognized "throughout the United

1

States in connection with Onsite's goods and services."  (*Id.*, PageID # 4)  The ONSITE® mark was registered with the U.S. Patent and Trademark Office on January 27, 2015.  (*Id.*, PageID # 3)

Bratcher and Farris are former Onsite employees.  (*Id.*, PageID # 4)  Bratcher held a position of trust at the company and "was able to learn how Onsite developed its market and service[d] its customers."  (*Id.*)  When Bratcher left Onsite, Farris soon followed, and the two formed Precision Diesel Repair (PDR), which directly competes with Onsite.  (*Id.*, PageID # 4-5)  Defendants use "sponsored link ads" in advertising for PDR.  (*Id.*, PageID # 5)  These ads "are triggered by the entry of certain keywords" that are "purchase[d]" by the advertiser and entered by computer users.  (*Id.*, PageID # 5-6)  They allow an advertiser "to bypass the search engine's usual relevancy factors and prominently display that advertiser's caption and text along with an accompanying link to a website specified by the advertiser."  (*Id.*, PageID # 5)  PDR's ads on Google, Bing, and similar search sites prominently feature the term "on-site" or "on site" and include a link to the PDR website.[1]  (*Id.*, PageID # 6-8)  As a result, consumers seeking the services that Onsite and PDR provide "are likely to believe that Defendants' services are Onsite's services, or originate from Onsite, or that Defendants' services are endorsed, sponsored by or approved by Onsite, or that there is some affiliation or connection between Defendants and Onsite" (*id.*, PageID # 8), and Onsite loses business to PDR.  (*Id.*, PageID # 8-9)

Onsite alleges that Defendants use the term "on-site" to take advantage of the reputation and goodwill associated with the ONSITE® mark.  (*Id.*, PageID # 9)  It asserts claims of trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and

---

[1] Screenshots of these ads are attached to Onsite's complaint.  (D.N. 1-2)  The searches used to generate the ads are "onsite truck truck [sic] repair," "onsite trailer repair," "onsite truck repair louisville KY," and "onsite truck repair."  (*Id.*, PageID # 20-23; *see* D.N. 1, PageID # 6-8)

1125(a), as well as common-law unfair competition. (*Id.*, PageID # 10-13) Defendants have moved to dismiss all of Onsite's claims. (D.N. 11) In the alternative, they ask the Court to enter summary judgment in their favor. (*Id.*)

## II. ANALYSIS

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2] A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id.* at 679.

A plaintiff states a claim of trademark infringement under the Lanham Act by "alleg[ing] facts establishing that: (1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing 15 U.S.C. § 1114(1)). Defendants do not dispute that Onsite's complaint satisfies these elements. However, they maintain that they are protected by the doctrine of fair use because they used Onsite's mark only in a descriptive sense and in good faith. (*See, e.g.*, D.N. 11-1, PageID # 80-82) They rely on *Hensley* as authority for disposing of

---

[2] The plausibility standard adopted in *Twombly* replaced the "no set of facts" test cited in Onsite's response brief. *See* 550 U.S. at 562-63. (*See* D.N. 14, PageID # 126-27)

an infringement case at the motion-to-dismiss stage on the basis of fair use. (*See* D.N. 11-1, PageID # 84)

In *Hensley*, the Sixth Circuit affirmed the dismissal of the plaintiff's complaint for failure to state a claim. 579 F.3d at 614. Hensley Manufacturing, a company that manufactured trailer hitches, sued its competitor ProPride and Jim Hensley, who designed hitches for ProPride after leaving the company that bore his name. *Id.* at 606. Hensley Manufacturing alleged that ProPride infringed on its registered trademark in the name "Hensley" by using Jim Hensley's name to advertise ProPride products. *Id.* The Sixth Circuit first found that Hensley Manufacturing failed to state a plausible claim of trademark infringement because (1) the complaint contained only a conclusory allegation that ProPride's use of Hensley's name "create[d] 'a strong likelihood of confusion in the marketplace as to the source of origin and sponsorship of the goods of the Plaintiff and the Defendant'"; and (2) the advertisements attached as exhibits to the complaint demonstrated that ProPride's use of Hensley's name did not create a likelihood of confusion. *Id.* at 611.

The court further held that even if Hensley Manufacturing's complaint adequately alleged likelihood of confusion, ProPride would be protected by the doctrine of fair use. *Id.* at 611-12. "Under [that] doctrine," the court explained, "the holder of a trademark *cannot* prevent others from using the word that forms the trademark in its *primary* or *descriptive* sense." *Id.* at 612 (quoting *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 319 (6th Cir. 2001)).

> Rather, "[t]he only right of exclusion that trademark law creates in a descriptive word is in the secondary, new, trademark meaning of the word that plaintiff has created. The original, descriptive primary meaning is always available for use by others to describe their goods, in the interest of free competition."

*Id.* (alteration in original) (quoting *Herman Miller*, 270 F.3d at 319). Defendants quote these passages repeatedly in support of their motion to dismiss, arguing that Onsite's claim is barred because they have engaged in fair use. (*See, e.g.*, D.N. 11-1, PageID # 73, 77, 83)

> The fair-use defense applies where
>
> the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin[.]

15 U.S.C. § 1115(b)(4). "In evaluating a defendant's fair use defense, a court must consider whether [the] defendant has used the mark: (1) in its descriptive sense; and (2) in good faith." *Hensley*, 579 F.3d at 612 (alteration in original) (quoting *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 920 (6th Cir. 2003)).

Defendants contend that their use of the term "on-site" (or "on site") is merely descriptive and in good faith. (*See, e.g.*, D.N. 11-1, PageID # 81-82) In support, they point to exhibits attached to their motion to dismiss. (*Id.*, PageID # 74-75) But a motion to dismiss for failure to state a claim tests the sufficiency of the complaint on its face, and "[a]ssessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings."[3] *Gavitt*, 835 F.3d 640 (citing *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010)). Otherwise, "the motion to dismiss must be treated as a motion for

---

[3] The Court "may consider exhibits attached to the complaint . . . and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citing *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). Here, the exhibits attached to the complaint "are referred to in the complaint and are central to the claims contained therein," *id.*; Defendants' exhibits—a printout of search results from the U.S. Patent and Trademark Office and an affidavit by PDR's Director of Operations—are not. (*See* D.N. 1; D.N. 11-2; D.N. 11-3)

summary judgment under Rule 56 and all parties must be given a reasonable opportunity to present all material pertinent to the motion." *Id.* (citing *Wysocki*, 607 F.3d at 1104). As Onsite has not had an opportunity to present—or discover—all material pertaining to Defendants' use of the term "on-site," the Court declines to convert the Rule 12(b)(6) motion to a motion for summary judgment and therefore will not consider Defendants' exhibits. *See* Fed. R. Civ. P. 12(d).

The Court likewise finds that consideration of the fair-use defense would be premature at this stage of the litigation. As the Sixth Circuit noted in *Hensley*, "Generally, 'dismissal for failure to state a claim upon which relief can be granted is appropriate in only the most extreme trademark infringement cases, such as where goods are unrelated as a matter of law, since the likelihood of confusion is generally a question of fact.'" 579 F.3d at 613 (quoting 32 Federal Procedure, Lawyer's Edition § 74:507 (2008)). The *Hensley* panel nonetheless found dismissal appropriate given that "the facts Hensley Manufacturing alleged in its complaint, as well as the attached exhibits, demonstrated that there was no likelihood of confusion and that the fair use defense conclusively applied as a matter of law."[4] *Id.* ("[T]here is no reason not to grant a

---

[4] The *Hensley* panel rejected Hensley Manufacturing's contentions "that 'facts *may exist* that establish a level of consumer confusion' and that "facts *may exist* that establish that "Hensley" is not being used fairly and in good faith,'" noting that "it was Hensley Manufacturing's burden to allege those facts, if they indeed exist, in the first instance." 579 F.3d at 613 (quoting Appellant's Br. at 13). A plaintiff is not typically required to anticipate an affirmative defense and plead around it. *See Bash v. Textron Fin. Corp. (In re Fair Fin. Co.)*, 834 F.3d 651, 678 (6th Cir. 2016) (noting district court's "fail[ure] to give heed to a basic principle of federal civil procedure: a plaintiff is not required to plead facts necessary to defeat an affirmative defense" (citing *Frank v. Dana Corp.*, 646 F.3d 954, 963 (6th Cir. 2011)); *see also Pfeil v. State St. Bank & Tr. Co.*, 671 F.3d 585, 599 (6th Cir. 2012) ("Courts generally cannot grant motions to dismiss on the basis of an affirmative defense unless the plaintiff has anticipated the defense and explicitly addressed it in the pleadings." (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009)); *Americash Loans, LLC v. AO Ventures, LLC*, No. 08 C 5147, 2009 U.S. Dist. LEXIS 22124, at *13-*14 (N.D. Ill. Mar. 19, 2009) (declining to consider fair-use defense because plaintiff was "entitled to present evidence that it believes negates such a defense

motion to dismiss where the undisputed facts conclusively establish an affirmative defense as a matter of law." (citations omitted)).  The advertisements attached to the complaint in *Hensley* showed that ProPride was careful not to "suggest any current association between Hensley Manufacturing and Jim Hensley or ProPride"; "ma[d]e clear that Jim Hensley [was] no longer associated with Hensley Manufacturing"; and "always refer[red] to 'Jim Hensley' and never simply use[d] the word 'Hensley' in connection with" the ProPride product at issue.  *Id.* at 611. Moreover, the advertisements "d[id] not use the name 'Hensley' in the trademark sense; they use[d] Jim Hensley's name only to identify him as a designer of trailer hitches . . . , describe his relationship to ProPride, and tell the story behind his success"—i.e., descriptive use.  *Id.* at 612. Because of this, and because "Hensley Manufacturing did not allege facts from which any inference of bad faith [could] be drawn," the court found the fair-use defense applicable.  *Id.*

Here, in contrast, the complaint and exhibits do not "conclusively establish" that the fair-use defense applies.  *Id.* at 612.  Onsite alleges that it has used and promoted the ONSITE® mark since 2006; that the mark is widely recognized and associated with Onsite's services; that Bratcher knew Onsite's marketing strategy and the value of the ONSITE® mark as a result of his past employment with Onsite; that Bratcher and Farris formed PDR to directly compete with Onsite; that internet searches for the term "on site" direct consumers to PDR's website as a result of Defendants' paid advertisements targeting that term; that these ads are likely to mislead consumers; that the ads divert business from Onsite to PDR; and that Defendants deliberately use the mark for that purpose.  (D.N. 1, PageID # 4-9)  It further alleges:

> Defendants . . . have adopted and are intentionally using the ONSITE®
> mark to trade upon the reputation and goodwill and consumer trust associated

---

and . . . was not required to present such information in its complaint").  As explained below, however, Onsite's complaint adequately rebuts the fair-use defense and thus meets even the heightened pleading standard seemingly contemplated in *Hensley*.

with Onsite's services, and to give Defendants' services customer appeal and salability which they would not otherwise have in the absence of the confusing similarity to the ONSITE® mark.

> . . . Mr. Bratcher and Mr. Farris, through their company, PDR, placed electronic advertisements openly and intentionally using the well-known ONSITE® mark as a means to gain instant identity in the market and to trade on the valuable goodwill developed by Onsite over the years.

(*Id.*, PageID # 9 ¶¶ 30-31)   Onsite's complaint is accompanied by screenshots of internet searches resulting in ads for PDR in which the term "On-Site" or "On Site" is prominent—in most cases, more prominent than PDR's web address.   (D.N. 1-2; *see id.*, PageID # 20, 22-23)   *Cf. Hensley*, 579 F.3d at 611 (advertisements attached to complaint contained disclaimers that made clear defendants were not associated with plaintiff).

Taken as true, these allegations and exhibits permit the Court to reasonably infer both that Defendants have engaged in trademark infringement and that their use of the term "on-site" is not merely descriptive and in good faith.   Onsite has therefore stated a plausible claim of trademark infringement under the Lanham Act and demonstrated, at least for present purposes, that the fair-use defense is inapplicable.   *Cf. Hensley*, 579 U.S. at 613.   And "since likelihood of confusion is the essence of an unfair competition claim and courts apply the same analysis for Kentucky common law trademark infringement and unfair competition claims as they do for federal claims of trademark infringement," those claims may also proceed.   *Oaklawn Jockey Club, Inc. v. Ky. Downs, LLC*, 687 F. App'x 429, 433-34 (6th Cir. 2017) (internal quotation marks and citations omitted) (finding 12(b)(6) analysis of Lanham Act trademark-infringement claim equally dispositive of unfair-competition claims under Lanham Act and Kentucky common law); *Hensley*, 579 F.3d at 609 n.5 (noting that claims of unfair competition under Lanham Act "employ the same 'likelihood of confusion' test as a claim for trademark infringement").   In sum, dismissal of Onsite's complaint under Rule 12(b)(6) is unwarranted.

### III. CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)　　Defendants' motion to dismiss (D.N. 11) is **DENIED**.

(2)　　Pursuant to 28 U.S.C. § 636(b)(1)(A), this matter is **REFERRED** to Magistrate Judge Dave Whalin for resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, and resolution of all nondispositive matters, including discovery issues. Judge Whalin is further authorized to conduct one or more settlement conferences in this matter.